# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:06-cv-97-Orl-28DAB**

**$442,721.00 IN U.S. CURRENCY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION OF THE UNTIED STATES OF AMERICA FOR DEFAULT JUDGMENT AS TO VICTOR ESCOBAR RODRIGUEZ (Doc. No. 11)**
>
> **FILED:** March 28, 2006
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

      The United States seeks to have a default judgment entered against the Claimant, Victor Escobar Rodriguez, for his counsel's failure to file a verified claim form on his behalf.

*Procedural History and Factual Background*

      On April 4, 2005, Victor Escobar Rodriguez was arrested at the Orlando Greyhound Bus Terminal and two boxes in his luggage which contained $442,721 in currency were seized. Doc. No. 1 ¶ 5A; Doc. No. 21 ¶ 4. On May 23, 2005, the Bureau of Customs and Border Protection sent a letter

and a Seized Asset Claim Form to Rodriguez regarding the seizure of the $442,721 in currency seized on April 4, 2005 because "[t]he facts available to Customs and Border protection indicated that you might have an interest in the seized property."  Doc. No. 23-2 at 2.  Publication of the notice of seizure and intent to forfeit commenced as of June 28, 2005.  Doc. No. 21 ¶ 7.  According to the United States, Rodriguez received the letter and attachments via certified mail on or about May 31, 2005.  Doc. No. 23-2 at 7.

On May 27, 2005, Escobar Rodriguez's counsel (Leslee Schwartz, J.D.) sent to the Customs and Border Protection a Seized Asset Claim Form, an Election of Proceeding Form, and a Verified Notice of Claim.  Doc. No. 23-2 at 9-13; Doc. No. 21 ¶ 8.  The Election of Proceeding Form indicated that Rodriguez wanted to pursue administrative procedures. Rodriguez's counsel confirmed on June 10, 2005 and July 1, 2005 that the Claimant wanted the seizure handled administratively. Doc. No. 23-2 at 15, 20.  On September 8, 2005, the Bureau of Customs and Border patrol acknowledged receipt of the Notice of Claim and denied Rodriguez's administrative petition for relief from forfeiture to return the seized funds.  Doc. No. 21 at 17-18.

On September 29, 2005, Rodriguez's counsel wrote to Customs and Border Protection to find out the status of the return of Rodriguez's funds.  Doc. No. 23-2 at 22.  On October 11, 2005, Rodriguez's administrative claim was denied and he was informed that he had the right to file a claim requesting judicial forfeiture proceedings in a United States District Court.  Doc. No. 23-2 at 26-27. On October 20, 2005, counsel for Rodriguez requested that the department commence judicial forfeiture proceedings in court and attached a new Seized Asset Claim Form dated October 25, 2005[1]

---

[1]The United States recognizes that the Seized Asset Claim Form should have been dated October 25, 2005.  Doc. No. 23-1.

in order "to facilitate" the commencement of judicial forfeiture proceedings in the court. Doc. No. 23-2 at 30-32; Doc. No. 21 at 19-21.

On January 23, 2006, the United States filed a Verified Complaint for Forfeiture *in rem* in the Middle District of Florida. Doc. No. 1. On March 17, 2006, the Clerk entered a default as to Rodriguez. Doc. No. 10. On March 28, 2006, the United States filed its Motion for Default Judgment as to Rodriguez. Doc. No. 11. Two days after the default motion was filed, on March 30, 2006, Rodriguez filed an Answer, without a new verified claim or verified statement, although Rodriguez's attorney had previously submitted Seized Asset Claim Forms in May 2005 and October 2005 with the request to commence judicial forfeiture proceedings. Doc. No. 12. The United States moved to strike Rodriguez's Answer on April 7, 2006. Doc. No. 14. The Court granted the motion, struck the Answer because the attorney who filed it, John Iannuzzi, Esq. of New York was not a member of the Middle District of Florida bar and had not sought *pro hac vice* admission pursuant to Local Rule 2.02. Doc. No. 17. The Court also ordered Rodriguez to show cause why the Motion for Default Judgment should not be granted against him. *Id*.

*Standards Applicable to the In Rem Currency Forfeiture*

Title 18, United States Code, Section 983(a)(4) provides: "In any case in which the Government files in the appropriate United States district court a complaint for forfeiture or property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of

notice of the filing of the complaint." 18 U.S.C. § 983(a)(4)(A). The claimant must also file an answer to the complaint not later than 20 days after filing the claim. 18 U.S.C. § 983(a)(4)(B).

Supplemental Rule C(6) provides:

(a) **Civil Forfeiture.** In an in rem forfeiture action for violation of a federal statute:
>    (I) a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right:
>    >    (A) within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4) . . . .
>    >    >    (iii) a person who filed a statement of interest in or right against the property must serve and file an answer within 20 days after the filing of the statement.

Fed. R. Civ. P. Suppl. Rule C.

**Analysis**

The issue in this case is whether the Court should allow Rodriguez leave to amend his Answer and file a verified statement or claim. The parties do not dispute that Rodriguez filed an Answer on March 30, 2006, once local counsel was hired. Doc. No. 21 ¶¶ 13-14. The parties also do not dispute that Rodriguez submitted to the Bureau of Customs and Border Protection a Verified Claim in May 2005 and a Seized Asset Claim Form in October 2005, although Rodriguez does not dispute that he did not submit a separate verified claim after the judicial forfeiture action was filed in federal court.

According the United States, a claimant may only file a verified statement and answer *after* being served with the United States' complaint or completed publication. Even if an answer is timely filed, according to the United States, if no verified claim is also filed, the claimant lacks statutory standing. In arguing that default judgment is appropriate, the United States relies on a number of non-binding cases in which courts have ruled that the filing of a claim in the administrative process is not a substitute for filing a verified claim or verified statement of interest in the judicial forfeiture action.

*United States v. $23,000*, 356 F.3d 157, 165-66 (1st Cir. 2004) (although the administrative claim and the judicial claim contain essentially the same information, they serve distinct purposes); *United States v. $1,437.00 in U.S. Currency*, 242 F. Supp. 2d 193 (W.D. N.Y. 2002) (claimant's filing of a claim in the administrative forfeiture proceeding is no excuse for claimant's filing only an answer without a verified claim in the judicial proceeding); *United States v. One 1990 Mercedes Benz 300CE*, 926 F. Supp. 1 (D. D.C. 1996) ("a claim submitted during the course of the administrative forfeiture proceeding does not satisfy the verified claim obligation of Rule C(6)").  The United States also contends that the same counsel representing Rodriguez in this case[2] represents him in another case regarding seizure of currency and counsel timely filed a verified notice of claim in that case. *See* Doc. No. 23-1 at 5.

The United States is correct that several courts have construed the Supplemental Rule C(6) time limits strictly. *See, e.g., United States v. Commodity, Account No. 54954930*, 219 F.3d 595, 597-98 (7th Cir. 2000) (7th Cir. 2000) (holding unverified claim precluded action where answer was filed two years after the claim); *United States v. Ford 250 Pickup*, 980 F.2d 1242, 1244-45 (8th Cir. 1992) (refusing to permit the late filing of an answer even though a verified claim was timely filed); *United States v. Real Property Located at 14301 Gateway Blvd. W.*, 123 F.3d 312, 313-14 (5th Cir. 1997) (affirming dismissal because claim and answer were untimely).

However, because of the complexity of the Supplemental Rules, some courts – including the Eleventh Circuit – have treated late claims more leniently where the claimant had taken some action with respect to the forfeiture, even if the action was in error.  *See, e.g., United States v. Borromeo*, 945

---

[2] Counsel in the case cited by the United States, *United States v. $185,000 in U.S. Currency*, Case No. 1:04-cv-00883-JG-CLP, is John Iannuzzi, and not Leslee Schwartz, who was directly responsible for Rodriguez's claim during the time in question.

F.2d 750, 753-54 (4th Cir. 1991) (claimant should be permitted to show excusable neglect under the Federal Rules of Civil Procedure when seeking to file a late claim); *United States v. Various Computers & Computer Equipment*, 82 F.3d 582 (3rd Cir. 1996) (reversing dismissal of an unverified claim of *pro se* claimant because the government and court were aware of the claim of ownership and actions had not thwarted the goals of the Supplemental Rule to come forward as quickly as possible).

Most significantly, the Eleventh Circuit allowed claimants to amend their late and technically defective claims in the case of *United States v. $125,938.62*, 370 F.3d 1325 (11th Cir. 2004). The Eleventh Circuit held:

> A district court "may require claimants in forfeiture proceedings to comply strictly with the rule's requirements in presenting claims to the court." 37 C.J.S. Forfeitures § 23. However, the court may exercise its discretion by extending the time for the filing of a verified claim. *U.S. v. One (1) 1979 Mercedes 450SE,* 651 F.Supp. 351, 353 (S.D. Fla. 1987). Among the factors the district court should consider in determining whether to exercise its discretion include: the time the claimant became aware of the seizure, whether the Government encouraged the delay, the reasons proffered for the delay, whether the claimant had advised the court and the Government of his interest in defendant before the claim deadline, whether the Government would be prejudiced by allowing the late filing, the sufficiency of the answer in meeting the basic requirements of a verified claim, and whether the claimant timely petitioned for an enlargement of time. *Id.* Moreover, the district court should consider the amount seized in evaluating the above factors. *U.S. v. U.S. Currency, in the Amount of $103,387.27,* 863 F.2d 555, 563 (7th Cir. 1988). The district court should be wary to not confer the sins of the attorney unto the claimant in a civil forfeiture case, especially when the prejudice to the government, if any, is slight. *U.S. Currency, $103,387.27,* 863 F.2d 555; *One (1) 1979 Mercedes 450SE,* 651 F.Supp. 351, at 354-5.
> . . .
>
> Forfeiture is a harsh penalty especially when the outcome is forced because of technical and procedural errors. We join our sister circuits in holding that "'amendments should be liberally permitted to add verifications to claims originally lacking them' provided that the amendment would not undermine the 'goals underlying the time restriction and verification requirements of Rule C.'" *U.S. Currency $103,387.27,* 863 F.2d at 561-2 (quoting *1982 Yukon Delta Houseboat,* 774 F.2d at 1436 (quoting 7A J. Moore & A. Palaez, Moore's Federal Practice, ¶ C.16, at 700.16 (2d ed.1983))). "[W]here a claimant has made known to the court and the

> government his interest in the subject property . . . before the deadline set for the filing of a proper claim has passed, the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim by subsequent verification. *U.S. Currency $103,387.27,* 863 F.2d at 563 (quoting *Yukon Delta Houseboat,* 774 F.2d at 1436).

*Id*. at 1328-30.

In a prior Southern District of Florida case cited with approval by the Eleventh Circuit, the trial court allowed the belated filing of the verified claim because it was "reluctant to visit the sins of an attorney upon his client" and because the Government had not specifically shown prejudice resulting from the untimely revelation of the claimant's exact identity. *United States v. One 1979 Mercedes 450SE,* 651 F.Supp. 351, 354-55 (S.D. Fla. 1987); *see also United States v. $347,542.00 in U.S. Currency*, No. 99-6792-Civ, 2001 WL 335828, *2 (S.D. Fla. Mar. 19, 2001) (claimants permitted to file their verified claims outside the timeline provided in the forfeiture procedural rules where claimant promptly corrected his original deficient claim by filing an amended claim six days after the government filed its motion to dismiss and there was no prejudice to the government from the late filed claim); *cf. United States v. 16 Parcels of Real Property,* 320 F.Supp.2d 1307, 1313-14 (S.D. Fla. 2003) (extension denied where claimants filed motion for leave to file verified claim four months late and following death of owner of subject property).

In this case, Rodriguez filed his answer on March 30, 2006, just two days after the United States filed its Motion for Default and thirteen days after the Clerk entered a default as to Rodriguez. Doc. Nos. 10, 11, 12. The United States moved to strike Rodriguez's Answer a week later, on April 7, 2006. Doc. No. 14. The Court struck the defective Answer because Rodriguez's counsel was not an admitted or *pro hac vice* member of the Middle District of Florida bar and gave Rodriguez the

opportunity to show cause why the Motion for Default Judgment should not be granted against him. Doc. No. 17.

As is clear from the responses of Rodriguez's counsel, the blame for the failure to timely file the Answer and verified claim falls on the law office of Rodriguez's counsel, and should not be imputed to Rodriguez. As John Iannuzzi, Esq. explains, he had been outside of the United States for a considerable period in March and April 2006, and during that time, associate counsel in his office was in charge of obtaining local counsel in the Middle District of Florida and arranging for the office to register for electronic filing. Doc. No. 18. When he returned to his office on April 18, 2006, he learned of the Order to Show Cause (why default should not be granted) and that the associate charged with arranging for local counsel had quit working at the law office without notice – "perhaps for the reason that all of the above had not been accomplished." Doc. No. 18. Counsel sought an enlargement of time to file a response to the Order to Show Cause, which the Court granted. Doc. No. 22. Shortly thereafter, Mr. Iannuzzi moved for *pro hac vice* admission and local counsel entered an appearance on April 24, 2006. Doc. No. 19, 20. Rodriguez filed his Memorandum in Opposition to the Default Judgment on April 25, 2006. Doc. No. 21.

As Rodriguez's counsel explained, "The tardiness of filing an Answer was not intentional nor in any fashion a manifestation by Claimant that he wished to abandon his claim to the funds herein. Rather, the same was occasioned, as aforesaid, by a difficulty in obtaining local counsel which would permit claimant to file documents electronically[3] herein." Doc. No. 21. Although the United States did not intentionally cause a delay, when counsel for Rodriguez submitted a second verified Seized Asset Claim Form on October 25, 2005 and formally requested the Department of Homeland Security

---

[3] Beginning in July 2005, the Middle District of Florida adopted an electronic filing system.

commence judicial forfeiture proceedings, the United States accepted the form without further ado or rejection as premature. Doc. No. 23-2 at 30-32; Doc. No. 21 at 19-21.  The Customs-prepared form refers to "the Court" in capitalized language under the attestation and oath: "IF THE COURT FINDS THAT THE CLAIMANT'S ASSERTION OF AN INTEREST IN THE PROPERTY WAS FRIVOLOUS, THE COURT MAY IMPOSE A CIVIL FINE ON THE CLAIMANT OF AN AMOUNT EQUAL TO 10 PERCENT OF THE VALUE OF THE FORFEITED PROPERTY" Doc. No. 23-2 at 32.  This would imply, perhaps to the uninitiated, that the form is one that will ultimately be before the Court.  Certainly Ms. Schwartz believed that submission of the verified claim form in October 2005 would "facilitate" the judicial forfeiture proceedings.  *See* Doc. No. 23-2 at 30 ("Please advise our office if there is anything further necessary to preserve our client's interest in the above indicated property.").

There is no prejudice to the United States, in that it was aware since May 2005 that Rodriguez was making a sworn claim to the seized currency; it was aware since October 2005 that Rodriguez was requesting a judicial forfeiture proceeding to decide his claim.  In fact, the United States described the seizure of the currency from Rodriguez in the complaint for forfeiture *in rem*.  Doc. No. 1. The government was certainly on notice as to his identity and the probability that he would assert an interest in the currency.  *See United States v. $125,938.62*, 370 F.3d at 1330.  There is no question that Rodriguez repeatedly notified the Government of his interest in the disputed currency before the claim deadline, and throughout the course of the administrative proceedings.  It was at the request of Rodriguez, who appears to be the principal and potentially sole Claimant, that judicial forfeiture was filed by the United States.  Therefore there is no prejudice, much less surprise, to the United States that Rodriguez would claim an interest in the $442,721 seized from boxes he was traveling with.

The Court must also consider the amount seized in evaluating the above factors. *United States v. $125,938.62*, 370 F.3d at 1329 (citing *United States v. United States Currency, in the Amount of $103,387.27,* 863 F.2d 555, 563 (7th Cir. 1988)). The amount seized in this case is quite substantial – nearly half a million dollars – an amount not unlike the $800,000 in total defective claims that the Eleventh Circuit found to be substantial and allowed to be amended in *United States v. $125,938.62*, 370 F.3d at 1329.

As the Eleventh Circuit has held, "forfeiture is a harsh penalty especially when the outcome is forced because of technical and procedural errors" and "amendments should be liberally permitted to add verifications to claims originally lacking them provided that the amendment would not undermine the 'goals underlying the time restriction and verification requirements of Rule C.'" *United States v. $125,938.62*, 370 F.3d at 1329-30 (quoting *United States v. U.S. Currency of $103,387.27,* 863 F.2d at 561-62). Given the particular circumstances before the Court in this case, allowing Rodriguez to amend his Answer (now that Mr. Iannuzzi is admitted to the Middle District bar) and to file a verified claim would not undermine the goals underlying the time restriction and verification requirements of Rule C. Claimant should be directed to file an amended answer complying with the governing rules and statutes within 11 days of any order adopting or approving this Report and Recommendation. Thereafter, the parties should proceed in compliance with the pretrial requirements of the Local rules of this Court.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 16, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy